PLEUS, J.
This is an appeal of the denial of a motion for a temporary injunction made pursuant to section 320.695 of the Florida Automotive Dealer’s Day In Court Act. We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(B). The trial court denied injunctive relief because it found that the petitioner was not a “motor vehicle dealer” as set forth in the statute. We affirm that decision.
The trial judge set forth the factual background and issue presented as follows:
The Dealer Development Group (DDG) was incorporated in 1989 for the stated purpose of allowing qualified individuals with insufficient capital to become owners of Toyota dealerships. In the dealer development program, DDG and an individual, as sole shareholders, would form a corporate dealership. Once the corporate dealership was formed, the individual received an opportunity to manage the dealership and the ability to acquire full ownership of it by applying dealership profits generated during his or her management towards the purchase of DDG’s interest in the dealership.
The Plaintiff, Brooks, was a District Manager at Southeast Toyota Distributors, LLC (SET), which is the exclusive Toyota distributor in Florida selling products manufactured and approved by Toyota Motor Corporation and imported *1238 and sold to SET by Toyota Motor Sales U.S.A., Inc. In 1996, DDG offered the Plaintiff an opportunity to participate in the dealer development program. To that end, the Plaintiff and DDG formed St. Johns Motor Sales, Inc. d/b/a St. Augustine Toyota (St. Augustine Toyota) pursuant to a Stockholder’s Agreement entered into on March 23, 1996. Under the terms of the Stockholder’s Agreement, DDG became the majority stockholder holding 5,250 shares of Preferred Stock, and Brooks became a minority stockholder holding 3,500 shares of Common Stock. The Plaintiff also agreed to manage St. Augustine Toyota pursuant to a Management Agreement entered into with the dealership on May 1,1996. On May 23,1996, St. Augustine Toyota became an authorized Toyota dealership by virtue of a Toyota Dealer Agreement entered into by SET and St. Augustine Toyota. The Toyota Dealer Agreement was renewed in 1998 for an additional two years, and a third agreement became effective on or about November 14, 2000 and was for a term of six (6) years.
On May 9, 2001, Walt Bovard, of DDG presented a letter to Brooks which terminated the Management Agreement. The termination was pursuant to Paragraph 5 of the Management Agreement which allowed for termination without cause upon 45 days prior written notice. In accordance with Section 11.01 of the Shareholder’s Agreement, upon the Plaintiffs termination the Shareholder’s Agreement was likewise automatically terminated and the Plaintiff was required to sell his shares of common stock to DDG.
Thereafter, on July 6, 2001, the Plaintiff filed a two count verified complaint. In the Complaint, the Plaintiff alleges violation of § 320.641 and § 320.645, Fla. Stat., and has asked that the Court grant both a temporary and permanent injunction against Defendants SET and St. Augustine Toyota pursuant to § 320.695, Fla. Stat. The grounds asserted for temporary or permanent in-junctive relief are assertions that SET and St. Augustine Toyota have “violated, and continue to violate, Section 320.6M, Florida Statutes, by failing to comply with the ninety day notice -requirement outlines in that statute, and by denying Brooks any reasonable expectation of acquiring full ownership of the dealership upon reasonable terms and conditions.” Brooks also contends he has been wrongfully removed as President, Dealer Operator and General Manager of St. Augustine Toyota, and that the Defendant’s “continue to divest him of his control, ownership and voting rights in the dealership.”
The central issue to be decided by this Court is whether the Plaintiff may be considered a “motor vehicle dealer;” a designation which would give Plaintiff standing to pursue an action for a temporary and/or permanent injunction in the Circuit Court under § 320.695, Fla. Stat.
In his order denying relief, Judge Tray-nor stated he felt compelled to rule that Brooks was not a “motor vehicle dealer” based on the facts and holding of Pearson v. Ford Motor Co., 694 So.2d 61 (Fla. 1st DCA 1997) (“Pearson III’). He also observed that prior to Pearson III being decided in state court, a similar action based on a similar federal law (the Automobile Dealers’ Day in Court Act, 15 U.S.C. Sections 1221-1225) was rejected by the federal courts at both the district and circuit levels. Pearson v. Ford Motor Co., 865 F.Supp. 1504 (N.D.Fla.1994) (“Pearson I”); Pearson v. Ford Motor Co., 68 F.3d 1301 (11th Cir.1995) (“Pearson *1239 II"). The trial court commented on his reluctance to deny relief:
Although the Court is compelled to rule in favor of the Defendant, it does so with reluctance since it believes the holdings and reasoning set forth in Kavanaugh [v. Ford Motor Co., 353 F.2d 710 (7th Cir.1965) ], York [Chrysler Plymouth v. Chrysler Credit Corp., 447 F.2d 786 (5th Cir.1971) ] and Coffee [v. General Motors Acceptance Corp., 5 F.Supp.2d 1365 (S.D.Ga.1998)] better fulfill the intent and purpose of the statute. The purpose of the Act was to stem abuses resulting from the disparity in bargaining power between manufacturers and franchise owners. Kavanaugh at 716-717. A review of the content of the Act, especially § 320.641, Fla. Stat. (2000), reveals that the Legislature put certain procedures in place whereby a motor vehicle dealer was entitled to notice should the manufacture decide to discontinue, cancel, or fail to renew a franchise agreement and; a manufacture’s actions in discontinuing, canceling, or failing to renew a franchise agreement with a motor vehicle dealer were to be subject to review by the Department of Highway Safety and Motor Vehicles.
This Court is concerned about the manner in which the statute has been interpreted by the Pearson courts since their interpretations may provide a loophole through which large corporations may structure their agreements leaving individuals with no redress under the statute. Under the Pearson cases, a manufacturer may structure its agreements in such a way that for many years it maintains control of an automobile dealership as a motor vehicle dealer, while an unsuspecting individual toils away hoping to one day become 100% owner of the dealership. Once the manufacturer’s objectives have been achieved, it is free, without being subject to the checks and balances in the statute, to discontinue, cancel, or fail to renew a franchise agreement without notice, without cause and/or without good faith.
In sum, an individual who has toiled for years with the goal of 100% ownership of a dealership may be left without his/her job, his/her security interest in the dealership, and more importantly, little recourse under a statute which the Court believes was enacted to protect his/her interests. As held in Kava-naugh at 716-717, where an individual is “deemed essential to the operation of [a] dealership” ... “the fiction of corporate entity [should] be disregarded [if] it has been adopted or used to evade the provisions of a statute.” Under Pearson, neither this Court nor any other court is given the opportunity to disregard a corporate fiction should one be found As such, this Court would like to make abundantly clear that the foregoing is not a statement as to any conduct by SET in the case at bar. The foregoing is merely the Court’s general observations as to abuses which could be suffered under the current reading of the statute.
We agree overall with the trial court’s underlying conclusions that the veil should not be pierced in this case and that Brooks otherwise lacks standing because the corporation, St. Augustine Toyota, not Brooks personally, is the “dealer” for whom the dealer protection statutes at issue provides relief. The fact that Brooks, pursuant to the parties’ agreements, could be dispensed with, belies his argument that he was “essential to the operation of the dealership.” There appears to have been no fraud committed on the part of SET or St. Augustine Toyota by the use of the corporate structure. Nor was there any showing that the corporation, DDG, was set up with the purpose of evading the state deal *1240 er protection statutes. Lipsig v. Ramlawi, 760 So.2d 170, 187 (Fla. 3d DCA 2000) (“unless there is a showing that a corporation was formed, or at least employed, for an unlawful or improper purpose — as a subterfuge to mislead or defraud creditors, to hide assets, to evade the requirements of a statute or some analogous betrayal of trust, the corporate veil cannot be pierced”). Here, just as in the case of Mike Smith Pontiac GMC, Inc. v. Smith, 486 So.2d 89, 90 (Fla. 5th DCA 1986), it was the corporate dealership that held the franchise with the automobile manufacturer. Accordingly, and with no justification existing for piercing the corporate veil, Brooks lacks standing to bring the instant injunction to prevent the corporate dealership from doing such acts as firing Brooks, acts which allegedly were done in a manner consistent with the terms of the parties’ contractual agreements.
We affirm the trial court’s order denying the remedy of injunctive relief.
AFFIRMED.
THOMPSON, C.J., and PETERSON, J., concur.